UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHAWN MEEKS, on behalf of himself
and all others similarly situated,

    Plaintiff,

v.

CHRIS NOCCO, as the duly elected Sheriff
of Pasco County, Florida

    Defendant.

Case No. 8:15-cv-01460-SCB-AEP

## DISPOSITIVE MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

COMES NOW CHRIS NOCCO, as the duly elected Sheriff of Pasco County, Florida ("Defendant" or "Sheriff's Office"), by and through his undersigned counsel and pursuant to Rule 56(a), Federal Rules of Civil Procedure, Rule 3.01(h), Local Rules for the Middle District of Florida, and this Court's Amended Case Management and Scheduling Order (D.E. 23), hereby moves this Court for summary judgment as to Count I of the Collective Action Amended Complaint and Demand for Jury Trial (D.E. 5) ("Complaint") as filed by SHAWN MEEKS ("Plaintiff" or "Meeks").

In Count I of his Complaint, Meeks raises a single wage claim based on his assertion that certain activities prior to and after the completion of his assigned shifts as a Road Patrol Deputy rendered time he spent commuting in his assigned agency vehicle to be compensable work hours, even though he concedes that he never reported the time spent on such activities as work hours on his time cards. Meeks claims that these additional work hours resulted in an underpayment of wages, and that he was denied overtime pay that was required under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). While the Plaintiff originally

1

brought this suit as a collective action, the parties have jointly stipulated to the dismissal of Plaintiff's collective action claim (Count II)(D.E. 30), and this Court has entered an order dismissing Count II of Meeks' Complaint. (D.E. 31).

With the completion of discovery, the Sheriff's Office moves this Court for summary judgment as the undisputed facts reveal that Meeks was responsible for accurately reporting all hours worked, and he was fully paid for all work hours which he reported, including pay for any overtime hours that he entered on his time cards. (D.E. 11-1). The only issue in dispute is a pure legal question – namely, whether the time Meeks spent commuting to and from his worksite and the secure site where he parked his agency vehicle was properly classified as non-compensable off duty time under the FLSA and its attendant regulations. As the current case law makes clear, such time is excluded from the FLSA by the Portal-to-Portal Act, and thus Meeks' FLSA overtime claim fails.

**I.     STATEMENT OF MATERIAL FACTS NOT IN DISPUTE[1]**

1. Shawn Meeks was a certified law enforcement officer employed by the Sheriff's Office as a Road Patrol Deputy from July 11, 2011 until March 2, 2015. (Meeks, 9-10; Meeks, Ex. 1 and Ex. 8).[2]

2. As a Road Patrol Deputy, Meeks generally was scheduled to work seven 12-hour shifts each 14-day work period, with an additional hour allowed for vehicle maintenance, for a total of 85 hours. (D.E. 6, Response to Court Interrogatory 3).

---

[1] Unless otherwise stated, all statements of material fact refer to that portion of the three-year period preceding the filing of Meeks' original pleading in this action (D.E. 1) when Meeks was employed as a Road Patrol Deputy. Thus, the relevant time period encompasses June 22, 2012 through March 2, 2015.

[2] "Meeks ___" refers to the transcript from the May 27, 2016 deposition of Shawn Meeks, followed by the appropriate numerical page reference. "Meeks, Ex. ___" refers to exhibits from the deposition, followed by the appropriate numerical designation. The deposition transcript and exhibits have been filed with the Court as D.E. 32-1.

3. Meeks was responsible for accurately generating his own time sheets during his employment with the Sheriff's Office. (D.E. 32-2, Response to Request for Admission 1; Maynard Aff. ¶ 3).[3] By electronically signing off on his time sheets at the end of his 14-day work periods under the heading: "I certify that the hours represented above are accurate and include all hours worked by me," Meeks certified to his supervisor that his reported work hours were accurate and reflected all hours worked. (Meeks, 50; Meeks, Ex. 9; Eakley, 18-19; Maynard Aff. ¶ 4).[4]

4. Meeks was also responsible for informing the Sheriff's Office when he failed to report all hours worked, so that the Sheriff's Office would know about the additional work time. (Eakley, 18-19). If Meeks realized that his submitted time sheet did not include all hours worked, he could correct his time sheet by writing an appropriate memorandum to his supervisor. (Eakley, 18-19). Under this procedure, the memorandum would include his hours worked, a description of the additional work performed, and the fact that he had not notified his supervisor that he had worked additional hours. (Eakley, 18). Once Meeks informed the Sheriff's Office of these additional hours worked, the Sheriff's Office would then become aware of the additional work hours and compensate him accordingly. (Eakley, 18-19).

5. Meeks was aware of this procedure to report additional hours worked, as evidenced by the fact that he made a post-submission correction to his time sheet for court time

---

[3] "Maynard Aff., ¶ __" refers to the June 29, 2016 affidavit of Janet Maynard, followed by the appropriate numerical paragraph designation. "Maynard Aff., Ex. __" refers to exhibits to her affidavit, followed by the appropriate numerical designation. This affidavit and exhibits have been filed with the Court as D.E. 32-3.

[4] "Eakley ___" refers to the transcript from the May 31, 2016 deposition of Major Mel Eakley as a corporate representative of the Sheriff's Office, followed by the appropriate numerical page reference. "Eakley, Ex. ___" refers to exhibits from this deposition, followed by the appropriate numerical designation. The deposition transcript and exhibits have been filed with the Court as D.E. 32-4.

duty on September 26, 2014. (Maynard Aff., Ex. 2). As a result of submitting this information regarding his additional hours worked, Meeks' time sheet was corrected, and the Sheriff's Office compensated him for this additional working time. (Maynard Aff., Ex. 2).

6. Pursuant to General Order 22.1, Section III(A)(3) of its General Orders or operating policies, the Sheriff's Office pays its nonexempt certified law enforcement officers overtime for all hours worked in excess of 85 during each 14-day work period. (Meeks, Ex. 10).

7. Given its budgetary restrictions, the Sheriff's Office at times utilizes "Flex Time" in order to minimize the occurrence of overtime wage liability to nonexempt personnel. Under this policy, a supervisor is authorized to adjust a law enforcement officer's shift schedule so that he or she does not work more than 85 hours during a 14-day work period. (Meeks, 54; see also Meeks, Ex. 10, General Order 22.1, Section III(A)(5)).

8. The Sheriff's Office paid Meeks for all hours worked, including overtime hours, as reflected on his completed time sheets as submitted to the Sheriff's Office for his 14-day work periods during his employment. (D.E. 32-2, Response to Request for Admission 2; D.E. 11-1).

9. In April 2011, Meeks made a complaint to the Department of Labor ("DOL") regarding the Sheriff's Office's pay practices. Part of Meeks' 2011 complaint to the DOL was that deputies were required to get fuel for their assigned agency vehicles during off-duty time. (Meeks 66-68, Meeks, Ex. 13).[5] Prior to the introduction of the fuel card program on June 1, 2014, which allows deputies to put fuel in their agency vehicles at any gas station, there were four Sheriff's Office locations where Meeks could go to put fuel in his agency vehicle.

---

[5] In 2013, another deputy's complaint prompted the DOL to conduct an investigation into the Sheriff's Office's compensation practices. (Meeks, 69).

4

(Barrington, 28; Eakley Aff., ¶ 7).[6] A review of the Sheriff's Office's records regarding fueling demonstrates that with but a few exceptions, Meeks fueled his assigned agency vehicle during his scheduled shifts, and as such, he has been compensated for this fueling activity. (Maynard Aff., ¶ 5; Maynard Aff., Ex. 3). When Meeks occasionally did put fuel in his agency vehicle outside his assigned shift, he did so within a few minutes of the start time for his shift. (Eakley Aff., ¶ 8; Maynard Aff., Ex. 3). Since Meeks was paid an additional one hour for vehicle maintenance each 14-day work period, and the most time that Meeks spent fueling his agency vehicle in any such work period aggregated to a total of only 12 minutes, it is clear that he was properly compensated for this out-of-shift refueling time.

10. While employed by the Sheriff's Office, Meeks was assigned a marked agency vehicle to use as a Road Patrol Deputy. (Meeks, 12; Meeks, Ex. 4, General Order 17.4, Section I (A) and (B)). However, the Sheriff's Office's operating policies did not generally allow for assigned agency vehicles to be driven by certified law enforcement officers outside of the geographical boundaries of Pasco County prior to February 28, 2013. (Barrington, 36;[7] Meeks, Ex. 4, General Order 17.4, Section II (B)). Effective February 28, 2013, May 6, 2014 and again on July 23, 2014, the Sheriff's Office modified its Agency Vehicles policy to allow deputies to operate their assigned agency vehicles within a certain radius of the Pasco County line. (Meeks, Ex. 5, General Order 17.4, Section II(B)) and Meeks, Ex. 7, General Order 17.4, Section II(B), respectively).

---

[6] "Eakley Aff., ¶ __" refers to the June 29, 2016 affidavit of Major Mel Eakley, followed by the appropriate numerical paragraph designation. "Eakley Aff., Ex. __" refers to the exhibits to his affidavit, followed by the appropriate numerical designation. This affidavit and exhibits have been filed with the Court as D.E. 32-5.

[7] "Barrington ___" refers to the transcript from the May 27, 2016 deposition of Sergeant Ben Barrington, followed by the appropriate numerical page reference. "Barrington, Ex. ___" refers to exhibits from the deposition, followed by the appropriate numerical designation. The deposition transcript and exhibits have been filed with the Court as D.E. 32-6.

11. For the period of Meeks' employment as a Road Patrol Deputy with the Pasco Sheriff's Office, Meeks was not authorized to drive his assigned agency vehicle home after his scheduled shifts as a Road Patrol Deputy, because Meeks lived outside of Pasco County and his home was more than 15 miles from the Pasco County line. (Meeks, 10). Accordingly, the 2013 and 2014 modifications to General Order 17.4 (Agency Vehicles) regarding the more liberal use of assigned agency vehicles outside of the geographical boundaries of Pasco County did not impact Meeks' routine commute to and from his scheduled shifts. (Meeks, 15).

12. Since February 28, 2013, the Sheriff's Office's Agency Vehicles policy provides that if a deputy does not commute home in his or her agency vehicle, he or she is expected to park his or her assigned agency vehicle at one of a number of secure locations within Pasco County. (Meeks, 13; Meeks, Ex. 5, General Order 17.4, Section II (B)(2)(c); Meeks, Ex. 7, General Order 17.4, Section II (B)(2)(c)). The policy was designed to help keep the agency vehicle safe and secure while unoccupied. (Barrington, 42-43; Eakley 2, 26-27).[8] In parking his assigned agency vehicle after completing his scheduled shift, Meeks was required to remove his patrol rifle and laptop computer. (Barrington, 21).

13. Since Meeks lived more than 15 miles from the Pasco County line during his employment with the Sheriff's Office, he commuted from his home to his scheduled work shifts in his personal vehicle, picking up his assigned agency vehicle at the Sheriff's Office's District 3 Patrol Division Office in Trinity, Florida, where he elected to park it following the conclusion of his previously scheduled shift. (Meeks, 10-12; Meeks, Ex. 3, Response to Interrogatory 3(b)). Because Meeks elected to park his vehicle at a secure location outside of his assigned patrol

---

[8] "Eakley 2, ___" refers to the transcript from the May 31, 2016 deposition of Major Mel Eakley in his individual capacity, followed by the appropriate numerical page reference. "Eakley, Ex. ___" refers to exhibits from this deposition, followed by the appropriate numerical designation. The deposition transcript and exhibits have been filed with the Court as D.E. 32-7.

zone, Meeks was also required to transfer his patrol rifle and laptop from his personal vehicle to his assigned agency vehicle before completing his commute to his assigned patrol zone. (D.E. 6, Response to Court Interrogatory 4).

14.  In picking up his assigned agency vehicle at the District 3 Patrol Division Office, Meeks was required by operating policy of the Sheriff's Office to turn on his police radio, to be alert and responsive to emergencies, and to turn on his Automatic Vehicle Locator system while completing his commute to his assigned patrol zone. (Meeks, Ex. 4, General Order 17.4, Sections II(C) and IX(B); Meeks, Ex. 5, General Order 17.4, Sections II(C)and IX(B); Barrington, Ex. 6, General Order 17.4, Sections II(C) and IX(B); and Meeks, Ex. 7, General Order 17.4, Sections II(C) and IX(B)). After picking up his assigned agency vehicle, Meeks generally spent an additional 15-20 minutes continuing his commute to his assigned patrol zone each shift. (D.E. 6, Response to Court Interrogatory 4).

15.  Under the Sheriff's Office's Agency Vehicles policy (Meeks, Ex. 7), Meeks was able to park his assigned agency vehicle at fire stations, law enforcement facilities, and residences of other sworn law enforcement officers. (Meeks, Ex. 7, General Order 17.4, Section II(B)(2)(1)). As Meeks was assigned to the "Raven 2" subsector of District 3 during the relevant time period (Meeks, 33), he could have eliminated his 15-20 minute commute to his patrol zone by parking at any secure location within Raven 2. Indeed, Meeks could have parked at Pasco County Fire Rescue Station 14, Pasco County Fire Rescue Station 30, the Pasco County Emergency Communications Office, the Pasco Sheriff's Administration Office, or the Pasco Sheriff's District 1 Patrol Division Office, which are all located within the Raven 2 subsector (later re-named Zulu 2). (Eakley Aff., ¶ 6; Eakley Aff., Ex. 2).

16. Meeks generally was expected to be within his assigned patrol zone at the time of the commencement of his shift, unless it was a read off day, in which case he commenced his shift at the District 3 Patrol Division Office and had no additional commute. (Barrington, 15). Meeks also was expected to activate his Automatic Vehicle Locator system before arriving in his assigned patrol zone (Barrington, 16), so that dispatch would be aware of his location for the member's personal safety. (Eakley, 27-28). While completing this commute to his assigned patrol zone, Meeks was allowed to stop for coffee or get his car washed. (Barrington, 32). For routine commutes in which he handled no emergency or call from dispatch, Meeks was not compensated for this 15-20 minute time he spent commuting between picking up his assigned agency vehicle and completing his drive to his assigned patrol zone. (Eakley, 22; 27-28).

17. At the conclusion of his scheduled shift as a Road Patrol Deputy, Meeks commuted back to the Sheriff's Office's District 3 Patrol Division Office in Trinity, Florida, where he parked and locked his vehicle, transferred his patrol rifle and laptop to his personal vehicle, and continued his commute home in his private vehicle. (D.E. 6, Response to Court Interrogatory 4). For routine commutes in which he handled no emergency or call from dispatch, and for shifts in which he had no paperwork or evidence to turn in at the Division Office, Meeks was required to stay in his assigned patrol zone until the end of his scheduled shift, and he was not compensated for the 15-20 minute commute between leaving his assigned patrol zone and dropping off his assigned agency vehicle at the District 3 Patrol Division Office where he picked up his private vehicle to commute the rest of his way home. (Barrington, 25; Eakley, 22-25). However, there were times in which Meeks could leave his assigned patrol zone prior to the end of the shift, if there was evidence or paperwork that he needed to submit back at the District 3 Patrol Division Office. (Eakley, 23). By doing so, he would then be able to leave the Patrol

Division Office to commute home at the ending time for his shift. (Eakley, 23). However, if the paperwork process took him beyond his scheduled shift, he was required to report the additional time on his time sheet so that he would be compensated for it. (Eakley, 23-24).

18.     While operating his assigned agency vehicle, Meeks was expected to record as hours worked any time spent responding to an emergency or dispatched call. (Barrington, 17-18; Eakley, 22). Once reported on his time sheets, this additional work time would be compensated at either the Road Patrol Deputy's regular rate of pay, or at his or her overtime rate of pay, depending on the number of hours worked during the deputy's 14-day work period. (Eakley, 22; Meeks, Ex. 10, General Order 22.1, Sections III (A) and III (A)(2); D.E. 11-1). If operationally possible, Meeks' supervisor also had the authority to use flex time to offset unscheduled additional work hours from off-duty road emergencies within the same work period. (Barrington, 18-19). This use of flex time allowed the Sheriff's Office to minimize unnecessary overtime liability when it was operationally feasible to do so. (Barrington, 19-20; Eakley 2, 16-18).

19.     Meeks voluntarily resigned from the Sheriff's Office effective March 1, 2015. (Meeks, 10: 1-5; see also Meeks, Ex. 2).

## II.     MEMORANDUM OF LAW

### A.  Legal Standard

A motion for summary judgment is due to be granted "if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts have explained that facts are material if they can "affect the outcome of the suit under the governing law," and as such the substantive law dictates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Regarding whether a movant is entitled to judgment as a matter of law, a movant must demonstrate that it can prove

sufficient evidence such that a jury would return a verdict in its favor. *Knight v. Allstar Bldg. Materials, Inc.*, 2009 WL 3837870, at *4 (M.D. Fla. Nov. 17, 2009). Thus, if the movant demonstrates that there are no disputed facts that would affect the outcome of the case, it is for the court to determine if the undisputed facts give rise to liability under the FLSA. *Dade County, Florida v. Alvarez*, 124 F.3d 1380, 1383 (11th Cir. 1997)("[t]he question of whether a particular set of facts and circumstances constitutes work under the FLSA is a question of law.") Although the burden is on the movant to show the foregoing, summary judgment is required when the non-moving party's response only contains mere conclusory allegations. *Payne v. Ryder System, Inc. Long Term Disability Plan*, 173 F.R.D. 537, 539 (M.D. Fla. 1997).

**B. The Sheriff's Office is Entitled to Judgment as a Matter of Law as to Meeks' Claim for Overtime under the FLSA**

Meeks' claim for overtime is based exclusively on his allegations that certain off-duty activities prior to and after the completion of his assigned shifts should have been treated by the Sheriff's Office as compensable work hours. More particularly, Meeks asserts that he spent approximately 15-20 minutes commuting between the District 3 Patrol Division Office and his assigned patrol zone after transferring his equipment from his personal vehicle to his agency vehicle, and an equal amount of time for the reverse commute and transferring of equipment at the end of his shifts. (Meeks, 30; Meeks, Ex. 3, Response to Interrogatory 3). As a result, Meeks claims to be owed compensation for approximately 3.5 to 4.6 hours during each 14-day work period during the relevant time period of his FLSA claim, although he concedes that he never put this commute time as work time on any of his time sheets. (Meeks, Ex. 3, Response to Interrogatory 2).[9] Meeks' asserted claim does not present a claim for which trial is required as

---

[9] Meeks' initial complaint in 2011 to the DOL raised concerns about time spent refueling his assigned agency vehicle. While for context Defendant has provided factual data herein about the

the only issue in this case is a pure legal question – namely, whether this time was properly classified as off-duty time under the FLSA and its attendant regulations. Relevant statutes, regulations, and case law make clear that such time is not compensable work time, and as a result, the Sheriff's Office is entitled to judgment as a matter of law on Meeks' claim.

The FLSA generally provides that public agencies must provide overtime compensation to non-exempt law enforcement officers who work in excess of 86 hours over a 14-day work period. 29 U.S.C. §§ 207(a) and 207(k)(2). However, in amending the FLSA, the Portal-to-Portal Act provides that time spent "walking riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" and "activities which are preliminary to or postliminary to said principal activity or activities" are not compensable. 29 U.S.C. §254(a). The Portal-to-Portal Act goes on to provide that:

> the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting *shall not be considered part of the employee's principal activities* if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

*Id.* (emphasis added).

The Supreme Court recently has reiterated that the term "principal activities" encompasses all activities that are "integral and indispensable" to the performance of such principal activities. *Integrity Staffing Solutions, Inc. v. Busk*, 135 S.Ct. 513, 517 (2014). However, the Court held that an activity is integral and indispensable to an employee's principal activities only when "it is an intrinsic element of those activities and one with which the

---

refueling options for Road Patrol Deputies and the actual records of Meeks' refueling activities, Meeks' interrogatory responses make clear that whatever time Meeks spent refueling his agency vehicle is not part of his current FLSA overtime claim in this case.

employee cannot dispense if he is to perform his principal activities." *Integrity Staffing Solutions*, 135 S.Ct. at 517.

In *Integrity Staffing*, the Court examined whether the time warehouse employees spent waiting to undergo and actually undergoing security screenings after their shifts was compensable. In holding that the time was not compensable, the Court found that such activities were not the principal activities that the employees were employed to perform, nor were they integral and indispensable to their duties. The Court explained that determining whether an activity is integral and indispensable is "tied to the productive work that the employee is *employed to perform*." *Id.* at 519. Because the security screenings were not an intrinsic element of their duties as warehouse employees, and further because the company could have eliminated the screenings without any adverse impact on the employees' abilities to do their jobs, they were not integral and indispensable to the performance of their principal activities and thus not compensable. In addition, the Court made clear that the proper legal test was not based on whether the activity was for the benefit of the employer, and also that whether the employer required the activity was immaterial.

The Eleventh Circuit has found that other pre- and post-shift activities, including activities similar to those activities for which Meeks seeks compensation, are similarly *not* compensable. In *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1343 (11th Cir. 2007), the Eleventh Circuit held that travel time is not compensable under the Portal-to-Portal Act, even if it is mandatory and involves carrying equipment to the worksite where the employee performs his or her principal activities of employment. In so holding, the Eleventh Circuit focused on the fact that the Portal-to-Portal Act plainly states that time an employee spends traveling to the place of the performance of his or her principal activities is not compensable. The Eleventh

Circuit also held that time employees spend in pre-shift security screenings was not compensable as such security screenings were not integral and indispensable to the employees' jobs. The Eleventh Circuit explained that only requiring a *mere causal necessity* between the preliminary activity and the employee's principal activity would render numerous pre- and post-shift activities, including commuting, to be "integral and indispensable" and thus compensable, which is not warranted under the FLSA.

Other recent circuit courts have reached similar conclusions. *See, e.g.*, *Adams v. United States*, 471 F.3d 1321, 1328 (Fed. Cir. 2006)(commute time spent by law enforcement officers driving to and from work in government-owned vehicles not compensable under the FLSA); *Antonsen v. United States,* 84 Fed.Cl. 760 (2008)(commute time spent by telecommunications specialists employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives not compensable under the FLSA); and *Reich v. New York City Transit Authority*, 45 F.3d 646 (2d Cir. 1995)(canine handlers' commute with dogs in vehicle generally not compensable under the FLSA).

Likewise, this Court has held that time spent securing materials and equipment in company vehicles, transporting materials and equipment in company vehicles, and traveling to job sites in those vehicles is not compensable as those activities are not integral and indispensable to an employee's primary duties. *Knight*, 2009 WL 3837870, at *7; *Shearer v. Edger Associates, Inc., et al.*, 2015 WL 9274928, at *4 (M.D. Fla. Dec. 17, 2015) (finding that the time a cardiac sonographer spent commuting with her ultrasound machine from her home to her initial job of the day, and from her last job of the day back home, was not compensable because such activities were not intrinsic elements of her principal activity).

In *Knight*, the court examined whether the time that the plaintiff spent securing materials in the company's trucks and commuting in those trucks constituted compensable work time under the FLSA. *Knight*, 2009 WL 3837870, at *1. In granting summary judgment to the employer, the court found that the time was not compensable because the employee did not perform any legally cognizable work while securing the materials and riding to the initial work site, and that such preliminary activities were not integral and indispensable to the employee's primary job duties as a carpenter's apprentice. *Id.* at *7. Regarding the commute time, the court relied on a number of cases that have consistently held that travel time from home to the employee's job site is not compensable. *Id.* at *2. The court found it significant that the employee's ride was within his normal commuting area, and further stated that it was of no import that the commute took place in an employer vehicle. *Id.*

Here, Meeks' claim of having worked "off duty" for part of the time he spent commuting does not constitute a viable FLSA claim. The Portal-to-Portal Act specifically excludes from the FLSA's coverage time spent traveling to and from the place of performance of the employee's principal activities. Moreover, cases have held that the Portal-to-Portal Act's language is clear that such time is not compensable. *Bonilla*, 487 F.3d at 1343. Thus, under the law, the time Meeks spent commuting to and from his patrol zone is not compensable.

Contrary to Meeks' contention in this litigation, the *de minimus* time Meeks spent transferring his patrol rifle and laptop computer from his personal vehicle to his agency-assigned vehicle does not change the nature of his remaining commute, as those activities are both (1) incidental to his commute, and are (2) preliminary and postliminary to the performance of his principal activities as a Road Patrol Deputy. *Brand v. Comcast Corporation*, 135 F.Supp.3d 713, 731 (E.D. Ill. 2015)(pre- and post-shift activities incidental to commute and use of employer's

vehicle are not compensable activities). As a law enforcement officer, the Sheriff's Office employed Meeks to perform the principal activities of preventing crime, protecting lives and property, apprehending and assisting in the prosecution of offenders, preserving the public peace, and enforcing various regulatory measures. Meeks was not employed to transfer equipment or to commute to and from his assigned patrol zone.

The activities that Meeks alleges should have been counted as compensatory working time were not, in fact, intrinsic elements of his principal activities. As the courts held in *Shearer* and *Bonilla*, transporting equipment and traveling to a worksite with work-related equipment are not intrinsic elements of an employee's principal duties when they are not tied to the principal work activities which the employee is employed to perform. As a result, Meeks' claimed activities were not "integral and indispensable" to the work he was employed by the Sheriff's Office to perform, and thus time spent was properly classified as off-duty, preliminary activities.

While there may be a causal necessity in that Meeks had to drive to his patrol zone with his equipment to begin his shift, relevant case law makes clear that a mere causal necessity to his primary duties as a law enforcement officer is insufficient to render such activities "integral and indispensable" under the FLSA. *Bonilla*, 487 F.3d at 1344. As a result, the time Meeks spent commuting in his assigned agency vehicle to and from his assigned patrol zone was non-compensable time.

Defendant anticipates that the Plaintiff will seek to rely on *Burton v. Hillsborough County, Florida*, 181 Fed.Appx. 829 (11th Cir. 2006), *McGuire v. Hillsborough County*, 511 F.Supp.2d 1211 (M.D. Fla. 2006)(applying *Burton*), and *Silas v. Hillsborough County*, 2006 WL 3133026 (M.D. Fla. October 30, 2006)(applying *Burton*) to support his contention that his pre- and post-shift commutes between his assigned patrol zone and the District 3 Patrol Division

Office should be compensable. In *Burton*, the Eleventh Circuit held that the time employees spent picking up and dropping off county vehicles at a secure location, along with the time they spent driving to and from the first and last worksites of the day, was compensable because these activities were required by the employer and done primarily for the benefit of the employer. However, *Burton's* analysis is no longer viable, due to the fact that the Supreme Court has made clear that "[a] test that turns on whether the activity is for the benefit of the employer is . . . overbroad." *Integrity Staffing*, 135 S.Ct. at 519.[10] Further, as explained above, the Supreme Court, Eleventh Circuit, and Middle District of Florida have all since *Burton* held that time spent in certain pre- and post-shift activities such as those in which Meeks was admittedly engaged, is not compensable as "hours worked" under the FLSA.

Defendant also anticipates that Plaintiff will seek to rely on two court decisions from outside our jurisdiction in support of his arguments – *Berry v. Office of Fayette County Sheriff*, 2015 WL 9165905 (E.D. Ky. Dec. 16, 2015) and *Brantley v. Ferrell Elec., Inc.*, 112 F.Supp.3d 1348 (S.D. Ga. 2015). However, in addition to being non-binding decisions, these cases are factually distinguishable.

In *Berry*, the Eastern District of Kentucky examined whether the time law enforcement officers spent in post-shift roll call was compensable. *Berry*, 2015 WL 9165905, at *4. The court found that the DOL's regulations specifically state that roll call is not a postliminary activity, but rather is so closely related to the performance of the principal law enforcement activities that it is a compensable activity. *Id.*, at *4 (citing 29 C.F.R. § 553.221(b)).

---

[10] While the Sheriff's Office does not contest that it may have benefited from the law enforcement presence of having Meeks on the road in his assigned patrol car, such a benefit is irrelevant as the Supreme Court unequivocally has stated that whether the employer derives a benefit from the employee's activities is not part of the appropriate legal analysis under the FLSA.

However, the compensability of time Deputy Meeks spent in "read off" status is not at issue in this case. Rather, Meeks is challenging whether the time he spent commuting to and from his assigned patrol zone in his assigned agency vehicle, after transferring certain equipment to his agency vehicle, is compensable. As noted above, the FLSA itself describes such time as preliminary and therefore, not compensable as work time. 29 U.S.C. §254(a). The DOL's relevant regulations provide similar guidance:

> A police officer, who has completed his or her tour of duty and who is given a patrol car to drive home and use on personal business, is not working during the travel time even where the radio must be left on so that the officer can respond to emergency calls. Of course, the time spent in responding to such calls is compensable.

29 C.F.R. §553.221(f). *See also*, 29 C.F.R. § 785.35 (normal travel from home to work is not work time); *Henson v. Pulaski County Sheriff's Dep't,* 6 F.3d 531, 536 (8th Cir.1993)(time spent by law enforcement officers monitoring radios during meal breaks held not compensable work time under the FLSA).[11]

In addition, courts have held that transferring equipment and commuting with the transferred equipment are not activities that are "integral and indispensable" to the performance of an employee's principal activities, even where such equipment is related to the employee's duties. *Shearer*, 2015 WL 9274928, at *4; *Knight*, 2009 WL 3837870, at *1. Such activities are best viewed as preliminary activities which are incidental to the employee's commute and use of an employer-provided vehicle. "Under *Integrity Staffing*, it is not enough to make [an] activity compensable under the [FLSA] that the employer requires it and it is done for the benefit of the employer." *Balestrieri v. Menlo Park Fire Protection District*, 800 F.3d 1094, 1100 (9th Cir.

---

[11] There also is no dispute here that time Meeks may have spent responding to emergencies while commuting to and from his assigned patrol zone in his agency vehicle prior to and after his scheduled shift was compensable work time, and that any such time was required to be identified on his submitted time sheets. (Eakley, 21-25).

2015)(holding that time spent by firefighters loading up turnout gear into their personal vehicles to facilitate reporting to temporary duty stations is a preliminary activity not intrinsic to the firefighting activities they are employed to perform).

Meeks fares no better in any attempt to rely on *Brantley*. The *Brantley* decision involved allegations that the plaintiffs were owed overtime for certain pre-shift activities, including receiving information regarding the day's assigned job sites and collecting specific supplies necessary to performing those assigned jobs. *Brantley*, 112 F.Supp.3d at 1360. The Southern District of Georgia found that the plaintiffs' pre-shift activities were integral and indispensable to their principal activities and thus compensable, because without performing these pre-shift activities, the employees could not successfully carry out their duties as electricians. The court explained that in order to be able to do their jobs, the employees had to obtain their work orders for the day, get instructions regarding the scope of the day's work, and collect and load the specific parts necessary to complete the assigned work.

Here, Meeks' claimed pre- and post-shift activities are not analogous to the pre-shift activities of the plaintiffs in *Brantley*. Meeks has not alleged that he spent any time prior to his shifts getting instructions for each day's work. Rather, Meeks claims that he is owed compensation for the time he spent commuting between the District 3 Patrol Division Office and his patrol zone, after transferring equipment between his personal vehicle and his agency vehicle.

Finally, the compensability of the road patrol deputy's commute to his or her assigned patrol zone in an agency vehicle should not turn on whether or not the road patrol deputy lives within a designated distance from the geographical boundaries of Pasco County. "Employees should not be compensated for doing what they would have to do anyway – getting themselves to work." *Bolick v. Brevard County Sheriff's Department*, 937 F.Supp. 1560, 1565 (M.D. Fla.

1996)(rejecting the contention that commute time transporting canines between home and work should be compensable work time under the FLSA). As do the Sheriff's Office's other Road Patrol Deputies who under the Sheriff's Office's Agency Vehicles policy are able to drive their agency vehicles home after each scheduled shift, Meeks is simply using his agency vehicle to partially complete his home-to-work and work-to-home commute each work day, with his radio on and his Automatic Vehicle Locator system activated. The only difference is the lone fact that by and through the Sheriff's Office's General Orders, Meeks is not able to drive his agency vehicle all the way from his assigned patrol zone to his out-of-county home residence.[12]

Thus, time spent by Meeks on such commuting activities is properly classified as not compensable work time under the FLSA, and summary judgment in favor of the Sheriff's Office is appropriate.

### III. CONCLUSION

For the reasons noted above, the Sheriff's Office is entitled to judgment as a matter of law on Meeks' asserted FLSA overtime claim. Defendant respectfully requests that the Court grant its Motion for Summary Judgment and enter judgment in favor of the Sheriff's Office.

Dated this 30th day of June, 2016.                    Respectfully submitted,

/s/ *David J. Stefany*
DAVID J. STEFANY
Florida Bar No. 0438995
ALLISON R. WALLRAPP
Florida Bar No. 106799
*Counsel for Defendant*

---

[12] Furthermore, it is undisputed that under the Sheriff's Office's General Orders, Meeks had the ability to park his assigned agency vehicle after his scheduled shift at any one of the multiple secure locations within his assigned patrol zone. (Eakley Aff., ¶ 6; Eakley Aff., Ex. 2).

**ALLEN NORTON & BLUE, P.A.**
Hyde Park Plaza - Suite 225
324 South Hyde Park Avenue
Tampa, Florida 33606-4127
(813) 251-1210 | (813) 253-2006 – Fax
E-mail:  dstefany@anblaw.com
awallrapp@anblaw.com

and

LINDSAY FARONI MOORE, ESQUIRE
Florida Bar No. 0027742
General Counsel

**PASCO SHERIFF'S OFFICE**
8700 Citizen Drive
New Port Richey, FL 34654
E-Mail: LMoore@pascosheriff.org
*Co-Counsel for Defendant*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of June, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing Gregory A. Owens and Miguel Bouzas, Bouzas Owens, P.A., 2154 Duck Slough Boulevard, Suite 101, Trinity, Florida 34655 [greg@bouzasowens.com and miguel@bouzasowens.com].

*/s/ David J. Stefany*
ATTORNEY