UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHAWN MEEKS, on behalf of himself
and all others similarly situated,

    Plaintiff,

v.                                      Case No. 8:15-cv-1460-T-24AEP

CHRIS NOCCO, in his official capacity as
Pasco County Sheriff,

    Defendant.
_____/

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, SHAWN MEEKS, by and through his undersigned counsel, moves the Court for summary judgment on Defendant's, CHRIS NOCCO, in his official capacity as Pasco County Sheriff ("Defendant" or "Pasco Sheriff") liability for overtime compensation due under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201, *et seq*. ("FLSA") and liability for liquidated damages under the FLSA.

**I.**    **UNDISPUTED FACTS**

Defendant, like other law enforcement agencies, is a paramilitary organization. (Eakley Dep. 10:8-16). As a result, there is an expectation within Defendant's organization that subordinates follow the lawful directives of their superiors. (Barrington Dep. 31:17-21; Eakley Dep. 10:17-25 to 11:1-4). If a subordinate does not follow a direct order from his/her superior, then that employee is subject to reprimand. (Barrington Dep. 31:22-25; Eakley Dep. 11:11-14). Moreover, if a superior gives a subordinate a directive that is contrary to a

General Order, the subordinate is expected to follow the superior's directive. (Eakley Dep. 15:4-14).

    **A.    Defendant's Agency Vehicle Policy**

On January 30, 2009, Defendant's General Order 17.4 regarding agency vehicles became effective. (Ex. 1). As of the effective date of the General Order, deputies residing outside of Pasco County ("out-of-county deputies") were not permitted to drive their agency patrol vehicles to and from their place of residence. (*Id*.). Defendant's agency patrol vehicles are purchased by the Board of County Commissioners, then turned over to the Sheriff. (Eakley Dep. 26:15-19). Thus, it is important to Defendant that the vehicles are kept as safe as possible since they are an investment. (*Id*. at 26:20-25). As stated in the General Order: "It is imperative that the Sheriff's Office maintains control and security of its fleet . . . ." (Ex. 1).

On February 28, 2013, Defendant amended[1] General Order 17.4 to include in its take-home vehicle policy those out-of-county deputies that live within 10 miles of the Pasco County line, provided the deputies share a portion of the commuting cost with Defendant. (Ex. 2). Deputies who declined the take-home option or were ineligible because they lived more than 10 miles[2] outside of the Pasco County border are required to park their agency patrol vehicles "at a secure location within the geographical boundaries of Pasco County and

---

[1] The first draft of any proposed change to a General Order typically comes from Defendant's legal department. (Barrington Dep. 33:9-24).

[2] On July 23, 2014, Defendant amended General Order 17.4 to include in its take-home vehicle policy those out-of-county Deputies that live within 15 miles of the Pasco County line, provided the Deputies share a portion of the commuting cost with Defendant. (Ex. 3).

must adhere to all policies and procedures regarding the securing of agency vehicles, weapons and equipment." (*Id.*). The General Order clarifies:

> The secure location is subject to approval by the division commander to include fire stations,[3] law enforcement facilities,[4] or residences occupied by other sworn law enforcement officers,[5] which includes county park property on which a deputy resides. If a vehicle is parked at a law enforcement officer's residence not located on county park property, the vehicle must be legally parked on a paved surface. Members must provide their division commander with PSO form #10154 (Designation of Agency Vehicle Parking Location).

(*Id.*). A deputy could choose any of those locations, as long as he/she had approval by the district commander and a representative from the location where they chose to park. (Barrington Dep. 12:8-25 to 13:1-5). If a deputy's request was denied, then the deputy had to park the patrol vehicle at one of the district offices. (Eakley Dep. 18:23-25 to 19:1-11). The purpose of parking the agency patrol vehicle at a secure location is for the Defendant's benefit by keeping the vehicle—Defendant's property—safe. (Barrington Dep. 42:17-25 to 43:1-4; Eakley Dep. 27:1-4). Consistently, while Sgt. Ben Barrington[6] could not recall a

---

[3] A fire station is secure because there is someone present 24 hours per day and has a lighted parking lot. (Barrington Dep. 43:24-25 to 44:1-6; Eakley Dep. 21:1-8).

[4] Defendant's three district offices are secure because there are lighted parking lots and "there is always someone around that lays eyes on the vehicles" so there is less likelihood of vandalism or theft. (Barrington Dep. 44:15-25 to 45:1-3; Eakley Dep. 20:5-22). Major Eakley cannot think of a time where a patrol vehicle was broken into at one of the district offices. (Eakley Dep. 20:12-14).

[5] At a residence, the vehicle has to be parked in the drive way, not in the yard, over the sidewalk, on the street, or at a neighbor's house. (Barrington Dep. 45:19-25 to 46:1-8). Although he could not recall a specific circumstance, Sgt. Barrington imagined that, agency-wide, a deputy was denied a request to park at another deputy's home on more than one occasion. (*Id.* at 47:7-17).

[6] Ben Barrington is a deputy sheriff and has worked for Defendant for almost 22 years. (Barrington Dep. 5:11-15). At all times relevant, his rank was Sergeant. (*Id.* at 6:10-21, 8:8-12).

specific circumstance, he was sure that over the course of his time working in the patrol division, one of his superiors directed a deputy as to which secure location to park his or her agency vehicle. (Barrington Dep. 51:2-7). Similarly, Major Mel Eakley testified that it was "very possible" that he denied a request for an out-of-county deputy to park at a particular location. (Eakley Dep. 23:15-21).

### B.   Pre-Shift and Post-Shift Responsibilities of Deputy Patrol

Out-of-county deputies are required to be in their patrol zone and ready at the start of their scheduled shift. (Barrington Dep. 15:6-19; Corp. Rep. Dep. 21:18-24[7]; Doc. 9[8]). When the deputies get in their agency patrol vehicle, they are required to have: (1) their computer installed and turned on; (2) their equipment and paperwork in the vehicle; (3) the GPS system turned on;[9] and (4) the radio turned on so they can communicate with dispatch. (Barrington Dep. 15:20-25 to 16:1-14; Corp. Rep. Dep. 26:10-25). From the moment the deputy gets in his agency patrol vehicle, the deputy is available to be dispatched. (Barrington Dep. 17:12-22).

Deputies are required to stay in their assigned patrol zones until the conclusion of their scheduled shifts, unless a deputy has business at a district office, substation or courthouse. (Corp. Rep. Dep. 24:24-25 to 25:1-7; Barrington Dep. 22:15-25 to 23:1-3; Doc. 9). If a deputy is unable to drop off paperwork or evidence at a district office during their

---

[7] Defendant designated Major Melbourne Eakley as its representative with knowledge pursuant to Rule 30(b)(6), Federal Rules of Civil Procedure. (Corp. Rep. Dep. 4:8-25 to 5:1-19).

[8] Doc. 9 refers to Defendant's Answers and Affirmative Defenses, at docket number 9.

[9] Defendant's agency patrol vehicles are equipped with an Automatic Vehicle Locator (AVL), which is essentially a GPS system. (Ex. 1). Pursuant to Defendant's General Order 17.4, Deputies are required to activate their AVL whenever a Deputy is operating an agency vehicle. (*Id.*).

shift, they are required to physically take it inside to the district office and submit. (Barrington Dep. 23:8-25 to 24:1-12). All property, except the rifle and laptop, are kept in the agency patrol vehicle at the end of a deputy's shift. (Barrington Dep. 21:13-25 to 22:1-8).

### C. Defendant's Pay Policy Regarding Drive Time

"We don't pay drive time if it's in-county." (Barrington Dep. 22-25). Out-of-county deputies, including Plaintiff, are not compensated for their drive time from the county-approved secure parking location to their assigned patrol zone. (Ex. 4; Corp. Rep. Dep. 22:18-23). Similarly, when an out-of-county deputy stays in his patrol zone until the conclusion of his shift, he is not compensated for the drive to the secure, county-approved parking location to park his agency patrol vehicle. (Barrington Dep. 25:7-21; Ex. 4). Deputies were compensated for activities that Defendant deemed "law enforcement related," but not when they were "just using the vehicle as a tool to get from point A to B." (Corp. Rep. Dep. 26:4-7).

### D. Plaintiff's Employment With Defendant

Plaintiff was employed by Defendant as a certified law enforcement officer in the position of Deputy Patrol. (Ex. 5). Plaintiff began his employment with Defendant on January 11, 2011.[10] (Plt. Dep. 9:13-16; Doc. 9). As a deputy, Plaintiff was responsible for "patrolling his assigned area for the prevention of crime, protecting lives and property, apprehending and assisting in the prosecution of offenders, preserving the public peace, and enforcing various regulatory measures." (Ex. 5). Plaintiff worked a 14-day work period and his regularly scheduled shifts were for 12 hours each. (*Id.*).

---

[10] For the relevant time period in this case—June 22, 2012 to March 2, 2015—Defendant admits that Plaintiff was an employee under the FLSA. (Ex. 4).

Plaintiff was assigned an agency vehicle "for use in carrying out his job duties and responsibilities." (Doc. 9). However, Plaintiff was ineligible to participate in Defendant's take-home vehicle program. (Ex. 6; Plt. Dep. 10:14-22; 15:20 to 17:3; Doc. 9). During the April/May 2011 timeframe, Lt. Prescott, with Sgt. Barrington's support, directed Plaintiff to park his agency patrol vehicle at the District 1 office.[11] (Barrington Dep. 58:22-25 to 59:1-15). Approximately 12 to 18 months later, Lt. Eric Anthes directed Plaintiff to park his agency patrol vehicle at the District 3 office,[12] where Plaintiff parked the vehicle for the remainder of his employment with Defendant. (Plt. Dep. 30:15 to 33:21). Plaintiff's patrol zone was primarily Holiday, Florida and New Port Richey, Florida. (Plt. Dep. 24:13-16). Therefore, it took Plaintiff approximately 15-20 minutes to drive from the secured parking location to his patrol zone and vice versa. (Plt. Dep. 30:10-14). As stated, Defendant did not compensate Plaintiff for his pre-shift and post-shift drive time between the district office where he parked his agency patrol vehicle and his assigned patrol zone. (Ex. 4).

On May 23, 2011, Plaintiff was issued a Performance Observation/Planning Report for showing "a lack of commitment/dedication to the Pasco Sheriff's Office." (Ex. 7). One of the reasons for Plaintiff's reprimand was for making a comment during read-off/roll call that he called the "Fair Labor Standards Law Act in Tampa" and said it was illegal for

---

[11] District 1 is located at 7432 Little Road, New Port Richey, Florida and was not within Plaintiff's work area. (Plt. Dep. 19:9-15, Doc. 9).

[12] Defendant's District 3 office is located at 11530 Trinity Boulevard in Pasco County, Florida. (Barrington Dep. 10:14-16). The District 3 office contained the following administrative functions: printing, reports, deputies' mailboxes, roll call, telephone, computers for downloading photos, supervisory offices, property and evidence drop, and interview room. (*Id*. at 10:20-55 to 11:1-7; Doc. 9).

Defendant to make deputies get fuel on their own time.[13] (*Id.*).  Sgt. Barrington felt that Plaintiff bringing up the complaint to the Department of Labor was inappropriate: "I took it as he was stirring the pot.  He was spreading nothing that was positive or beneficial.  And if that was allowed to continue, it would be a cancer and it would grow . . . It was all detrimental to the team environment that we have, that we depend on." (Barrington Dep. 26:1-22, 27:2-4).

### E. The DOL Investigation

Between approximately June 1, 2011 and October 18, 2012, the United States Department of Labor, Wage and Hour Division ("DOL"), conducted a wage and hour audit of Defendant. (Ex. 8).  Based on the investigation, the DOL found that back wages were due to 67 employees of Defendant, including deputies who, like Plaintiff, (1) resided outside of Pasco County, (2) parked their patrol vehicles at County-approved locations, and (3) were not compensated for their drive between the vehicle parking location and their assigned patrol zone. (*Id.*).  Ultimately, Defendant refused to comply with the DOL's findings and did not compensate the 67 deputies for the drive time. (*Id.*).

On June 25, 2013, Defendant held a press conference regarding the DOL's investigation into the out-of-county deputies' drive time. (Ex. 9).  Defendant said the DOL was making "baseless allegations" and he wanted to speak with someone else from the DOL "who recognizes the insanity of this." (*Id.*).  In addition, Defendant reiterated its refusal to comply with the DOL's findings and referred to the audit as a "witch hunt."

---

[13] There was a period of time where getting fuel during shift was "an area of contention" because there were only four locations to get fuel and only one practical location on the west side. (Barrington Dep. 28:2-13).  The issue was resolved 2 ½ years ago when Defendant issued fuel cards to the deputies, which "saved hundreds of man hours." (*Id.* at 28:13-22).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Stated differently, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law. *McGuire v. Hillsborough County, Fla.*, 511 F.Supp.2d 1211, 1212 (M.D. Fla. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986)). The moving party bears the initial burden of showing the Court, referencing the materials on file, that there are no genuine issues of material fact that should be decided at trial. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). Conversely, the Court must draw all inferences from the evidence in the record in the light most favorable to the non-moving party and resolve all reasonable doubts in that party's favor. *Id*. For the reasons set forth below, Plaintiff has met his burden and it is appropriate for the Court to grant summary judgment in Plaintiff's favor.

## III. MEMORANDUM OF LAW

The FLSA requires employers to compensate employees at a rate of time and one half their regular rate of pay for all hours worked in excess of 40 in a work week.[14] 29 U.S.C. § 207. However, an employer is not required to pay an employee for all of the employee's time associated with work and the FLSA was amended to reflect that idea in the Portal-to-Portal Act. 29 U.S.C. § 251 *et seq*.; *Burton v. Hillsborough County, Fla*., 181 Fed. Appx. 829

---

[14] Law enforcement officers are treated slightly differently. Under a "partial exemption," a public employer does not owe overtime to an employee engaged in law enforcement activities until he works more than 86 hours per two-week period. 29 C.F.R. § 553.230.

(11th Cir. 2006). Pursuant to the Portal-to-Portal Act, employers are not subject to liability under the FLSA for failure to pay employees overtime compensation for:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.[15]

29 U.S.C. §254(a). Nonetheless, preliminary and postliminary activities are compensable if they are "an integral and indispensable part of the employee's principal activities." *Burton*, 181 Fed. Appx. at 833; *Steiner v. Mitchell*, 350 U.S. 247, 256, 76 S.Ct. 330 (1956). The Supreme Court has consistently interpreted the term "principal activity or activities to embrace all activities which are an integral and indispensible part of the principal activities." *Integrity Staffing Solutions, Inc. v. Busk*, 135 S.Ct. 513 (2014); *IBP, Inc. v. Alvarez,* 546 U.S. 21, 29-30, 126 S.Ct. 514 (2005); *Steiner v. Mitchell*, 350 U.S. 247, 252-253, 76 S.Ct. 330 (1956).

---

[15] The last sentence of 29 U.S.C. § 254(a) is a result of the Employee Commuting Flexibility Act of 1996 ("EFCA"), which amended the Portal-to-Portal Act.

    A.      **The Hillsborough County Cases**

Both the Eleventh Circuit and this honorable Court have squarely addressed the factual and legal issues in Plaintiff's case and held that Hillsborough County employees were entitled to summary judgment on the issue of whether similar drive time is compensable under the FLSA. See *Burton v. Hillsborough County, Fla.*, 181 Fed. Appx. 829 (11th Cir. 2006); *Silas v. Hillsborough County, Fla.,* 2006 WL 3133026 (M.D.Fla. Oct. 30, 2006) (Whittemore, J.); *McGuire v. Hillsborough County, Fla.*, 511 F.Supp.2d 1211 (M.D. Fla. 2007) (Bucklew, J.) ("the Hillsborough County cases").

In *Burton*, the Eleventh Circuit affirmed this Court's order of summary judgment in favor of the plaintiffs and held that county engineering employees were entitled to overtime pay for time spent driving county-owned vehicles from secure county-approved parking sites to their first work site of the day and from their last work site of the day back to the county-approved parking site. *Burton*, 181 Fed. Appx. at 831-840. The Court further held that going to the county-approved parking sites at the beginning and end of their shifts were principal activities and not *de minimus*. *Id*. at 838.

The *Burton* and *McGuire* Courts identified the federal regulation that directly addresses the issue in those cases and in this case, which reads:

> Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. ***Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m.***

> *and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time.* However, if the employee goes home instead of returning to his employer's premises, the travel after 8 p.m. is home-to-work travel and is not hours worked.

29 C.F.R. §785.38; *Burton*, 181 Fed. Appx. at 834; *McGuire*, 511 F.Supp.2d at 1215 (emphasis in *McGuire*). Therefore, "where an employer's mandate or job requirement interrupts an employee's home-to-work and work-to-home path, the travel time necessary for the employee to fulfill that requirement falls outside of exempted activity in § 254(a), and is therefore compensable under the FLSA" even if the employee is using an employer-owned vehicle. *Burton*, 181 Fed. Appx. at 834-35. Plaintiff's case, like *Burton*, does not involve home-to-work travel in a company vehicle and therefore falls outside of the ambit of ECFA. *Id*. at 836. "Under the ECFA, otherwise non-compensable traveling is not compensable merely because the employee uses his employer's vehicle. Likewise, otherwise compensable travel time does not become non-compensable simply through the use of an employer-owned vehicle." *McGuire*, 511 F.Supp.2d at 1217, (quoting *Id*. at 835 (internal quotations omitted)). The facts here are undisputed that Defendant's mandate/job requirement interrupted Plaintiff's home-to-work and work-to-home path and is therefore compensable under the FLSA.

Plaintiff's case parallels the Hillsborough County cases in several important ways. First, both Plaintiff and the Hillsborough employees were provided vehicles by their employers for the performance of their jobs. See *Burton*, 181 Fed.Appx. at 831. Second, both were required to park their work vehicles at secure locations, approved by their employers. See *Id* at 836. In Plaintiff's situation, he was specifically directed where to park

his agency patrol vehicle. Third, both were required to use their vehicles as satellite offices containing significant tools, equipment and paperwork necessary for performing the essential functions of their jobs. *Id*. at 831.

However, the facts of this case go beyond the Hillsborough County cases in at least one important aspect. Unlike the Hillsborough County employees, Plaintiff's vehicle itself is an integral and indispensable tool that is necessary for the performance of his job. In the Hillsborough County cases, the employees could have theoretically performed their jobs with personal vehicles, had the County permitted. Plaintiff, on the other hand, simply could not have performed his job as a patrol deputy without his patrol car and the tools contained within the vehicle. See *Id.* at 836 (noting that "the employees' workday could not begin until they arrived at the parking site and retrieved the county vehicles-making the act of retrieving the vehicle a 'principal activity' and, therefore, the parking site itself 'a place of actual performance.'") *See also Secretary of Labor v. E.R. Field, Inc.*, 495 F.2d 749, 751 (1st Cir. 1974) (holding that the time spent by the employee driving the employer's vehicle from the last job site of the work day to the employer's shop before driving his personal car home was compensable time). In order for Plaintiff to be in his assigned patrol zone at the start of his shift and stay until the end of his shift, he needed his patrol vehicle. Accordingly, the undisputed facts show that retrieving and returning Defendant's agency vehicles were principal activities and therefore compensable under the FLSA.

Additionally, the time Plaintiff spent driving his patrol vehicle to and from his assigned patrol zone was not *de minimis*.[16] Plaintiff testified that it took him approximately 15 to 20 minutes each way, which, over his two week tour of duty results in approximately 3.5 to 4.6 hours of overtime. Since the uncompensated drive time occurred during almost every shift worked by Plaintiff, the aggregate amount of compensable time is far more than a mere trifle, and there would be no administrative difficulty for Defendant to record the time, Plaintiff's drive time is compensable. *See Burton*, 181 Fed.Appx. at 838-39.

For these reasons, Plaintiff does not fall within the meaning of the Portal-to-Portal Act, including the ECFA, nor was his compensable work time *de minimis*. Instead, Plaintiff's drive time to and from the secure parking site and his assigned patrol zone is a principal activity that falls squarely within the ambit of 29 C.F.R. § 785.38 and the precedent set forth in the Hillsborough County cases.

### B. Plaintiff Meets the Supreme Court's Clarified Definition of Integral and Indispensible

In 2014, the Supreme Court clarified the definition of "integral and indispensable." *See Integrity Staffing Solutions, Inc. v. Busk*, 135 S.Ct. 513 (2014). In defining "integral and indispensable," the Court held: "[a]n activity is therefore integral[17] and indispensable[18] to the

---

[16] When applying the *de minimis* rule to otherwise compensable time, courts consider the following: "(1) the practical administrative difficulty in recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Burton*, 181 Fed.Appx. at 838 (quoting *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984)).

[17] The Court defined integral as: "belonging to or making up an integral whole; constituent, component; specifically necessary to the completeness or integrity of the whole; forming an intrinsic portion or element, as distinguished from an adjunct or appendage." *Id*. at 517.

[18] The Court defined indispensible as: "a duty that cannot be dispensed with, remitted, set aside, disregarded, or neglected." *Id*. at 517.

principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id*. at 517.  Ultimately, the Court held that security screenings that warehouse employees were required to go through were not the "principal activity or activities which the employee is employed to perform." *Id*. at 518, quoting 29 U.S.C. §254(a)(1).  Conversely, the employer "could have eliminated the screenings altogether without impairing the employees' ability to complete their work." *Id*.  In other words, "an activity is 'indispensable' to another, principal activity only when an employee could not dispense with it without impairing his ability to perform the principal activity safely and effectively." *Id*. at 520. (Sotomayor & Kagan, JJ., concurring). In reaching its decision, the Court references cases where preliminary and postliminary work is compensable, along with the plain language of the regulations. *Id*. at 516-19.  The Court simply clarified the meaning of "integral and indispensible," while applying the definition to the facts of the case. *Id*.  In doing so, the Court noted that using simple tests such as whether the employer required an activity or whether the activity is for the benefit of the employer would be overbroad. *Id*. at 519.  Instead, the integral and indispensable test is "tied to the productive work that the employee is employed to perform." *Id*.  Simply because the employer in *Integrity Staffing* required the employees to go through the security screening and the activity was for the employer's benefit was not itself enough to make the time compensable. *Id*.  What is important is whether the activity itself is integral and indispensable to the principal activities that Plaintiff was employed to perform. *Id*. at 517.

Although the Supreme Court was addressing a vastly different factual scenario in *Integrity Staffing*, the holding comports with the holdings in *Burton*, *McGuire* and *Silas*. While the Eleventh Circuit may not have used the precise language as the Supreme Court, the principle is the same: "[w]ithout the county vehicles the employees could not perform the principal activities for which they were employed-driving throughout Hillsborough County and inspecting public works construction sites. Needless to say, getting a county vehicle from the parking site and driving it to the first work site and returning it to the parking site was integral and indispensable to the plaintiffs' principal activities." *Burton*, 181 Fed. Appx. at 837. More importantly, the Supreme Court's definition of integral and indispensable has practical and meaningful application to the facts in Plaintiff's case.

Defendant's own description of Plaintiff's job duties and responsibilities drives home the integral and indispensable nature of the patrol vehicle. Defendant states that Plaintiff was responsible for "*patrolling* his assigned area for the prevention of crime, protecting lives and property, apprehending and assisting in the prosecution of offenders, preserving the public peace, and enforcing various regulatory measures." The vital word is *patrol*. Without his patrol vehicle, Plaintiff simply could not perform the law enforcement duties of a Deputy Patrol. He could not patrol his assigned area. He could not be visible to the community. He could not be in touch with dispatch. He could not have all of the tools, equipment and paperwork necessary to handle the myriad law enforcement responsibilities that arise during his shift. It is difficult to think of a factual scenario where an activity is more integral and indispensable to the principal activities that Plaintiff is employed to perform. A patrol deputy simply cannot dispense of the patrol vehicle if he is to perform his principal activity

of patrolling. As Defendant admits: Plaintiff was assigned an agency vehicle "for use in carrying out his job duties and responsibilities." As such, the use by Plaintiff of the agency patrol vehicle for his drive to and from his assigned patrol zone is integral and indispensable to his principal activities of law enforcement patrol; therefore, summary judgment is appropriate.

### C.       Defendant is Liable for Liquidated Damages as a Matter of Law

Defendant is liable for liquidated damages in an amount equal to the Plaintiff's unpaid overtime compensation, unless Defendant "demonstrates that it subjectively acted in good faith and had objectively reasonable grounds for believing that its failure to pay overtime was not in violation of the FLSA." 29 U.S.C. §§ 216(b), 260; 29 C.F.R. § 790.22; *Silas*, 2006 WL 3133026 at *6; *Spires v. Ben Hill Co.*, 980 F.2d 683, 689 (11th Cir. 1993). To show good faith, Defendant must show that it had "an honest intention to ascertain what the FLSA requires and to act in accordance with those requirements." *Silas*, 2006 WL 3133026 at *6 (citing *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1566 (11th Cir. 1991)). To be sure, "good faith requires some duty to investigate potential liability under [the] FLSA." *Id.* at *6 (quoting *Barcellona v. Tiffany English Pub., Inc.*, 597 F.2d 464, 469 (5th Cir. 1979)). Whether the good faith defense applies "is an issue of mixed law and fact for the Court, not the factfinder, to determine." *Id.* (citing *Dybach*, 942 F.2d at 1566 and 29 C.F.R. §790.22(b)-(c)).

Both the *McGuire* and *Silas* Courts held that the plaintiffs were entitled to summary judgment regarding liquidated damages. *McGuire*, 511 F.Supp.2d at 1217-18; *Silas*, 2006 WL 3133026 at *6-7. In doing so, the Courts determined that neither the defendant's

sending a letter to the DOL (after the DOL already reached out to Defendant), nor its selective interpretation of case law was good faith to avoid liquidated damages. *Id*. Moreover, in *McGuire*, this Court noted that the defendant should have considered 29 C.F.R. §785.38 because the regulation "shows that travel from an employer-designated location to the workplace is compensable under the FLSA." *McGuire*, 511 F.Supp.2d at 1217.

Defendant has shown a complete lack of good faith. In the face of a clear federal regulation, binding and persuasive case law, and a lengthy DOL investigation that culminated in a finding that Defendant violated the FLSA, Defendant brazenly thumbed its nose at the law and refused to pay Plaintiff and the other out-of-county deputies the overtime compensation they are owed. When Plaintiff brought up the DOL/FLSA, he was reprimanded. When the DOL determined that Defendant was in violation of the FLSA, Defendant held a press conference, said the allegations were baseless and called it a "witch hunt." Not only did Defendant lack an honest intention to ascertain what the FLSA requires, Defendant knew exactly what the FLSA required in this situation and deliberately violated federal law. As a result, summary judgment in favor of Plaintiff on the issue of liquidated damages is appropriate.

## IV.  CONCLUSION

There are no genuine issues of material fact regarding whether Plaintiff should have been compensated for the time spent driving from Defendant's county-approved agency vehicle parking location and Plaintiff's assigned patrol zone prior to the start of his scheduled shift, as well as for the time spent driving from his assigned patrol zone to Defendant's county-approved agency vehicle parking location at the conclusion of his scheduled shift.

Thus, based on the foregoing, Plaintiff respectfully requests that this honorable Court enter summary judgment against Defendant on Defendant's liability under the FLSA for its overtime violations, as well as liquidated damages. The only matter remaining for trial is the issue of damages.

        Respectfully submitted,

**BOUZAS OWENS, P.A.**
s/ *Gregory A. Owens*_____
**GREGORY A. OWENS, ESQUIRE**
Florida Bar No.: 51366
greg@bouzasowens.com
**MIGUEL BOUZAS, ESQUIRE**
Florida Bar No.: 4894
miguel@bouzasowens.com
2154 Duck Slough Blvd., Suite 101
Trinity, Florida 34655
(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of June, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and hand-delivered to Defendant.

        s/ *Gregory A. Owens*_____

        Attorney for Plaintiff