UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHAWN MEEKS,

       Plaintiff,

v.                                                                          Case No.  8:15-cv-1460-T-24 AEP

CHRIS NOCCO, in his official capacity
as Pasco County Sheriff,

       Defendant.
_____/

## **ORDER**

This cause comes before the Court on cross-motions for summary judgment (Doc. No.

32, 33) and the responses thereto (Doc. No. 38, 39).  As explained below, Defendant's motion is

denied, and Plaintiff's motion is granted in part and deferred in part.

## **I.  Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The Court must draw all inferences from the evidence in the light most favorable to the

non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d

1315, 1320 (11th Cir. 2006)(citation omitted).  The moving party bears the initial burden of

showing the Court, by reference to materials on file, that there are no genuine issues of material

fact that should be decided at trial.  See id. (citation omitted).  When a moving party has

discharged its burden, the non-moving party must then go beyond the pleadings, and by its own

affidavits, or by depositions, answers to interrogatories, and admissions on file, designate

specific facts showing there is a genuine issue for trial.  See id. (citation omitted).

## II.  Background[1]

Plaintiff Shawn Meeks was a certified law enforcement officer employed by the Pasco

County Sheriff's Office as a Road Patrol Deputy from July 11, 2011 until he resigned on March

1, 2015.  As a Road Patrol Deputy, Plaintiff generally was scheduled to work seven 12-hour

shifts each 14-day work period, with an additional hour allowed for vehicle maintenance, for a

total of 85 hours.[2]

While employed by the Sheriff's Office, Plaintiff was assigned a marked agency patrol

vehicle for his use as a Road Patrol Deputy.  However, because Plaintiff lived more than 15

miles outside of the Pasco County line, the Sheriff's Office's operating policies did not allow

him to drive his patrol vehicle home from work.  As a result, Plaintiff was expected to park his

patrol vehicle at one of a number of secure locations within Pasco County.  This parking policy

was designed to help keep the patrol vehicle safe and secure while unoccupied

Each morning, Plaintiff drove his personal vehicle from his home to the secure parking

location; the secure location that Plaintiff parked at was the Sheriff's Office's District 3 Patrol

Division Office in Trinity, Florida.  Upon arrival, Plaintiff removed his patrol rifle and laptop

computer from his personal vehicle and put those items into his patrol vehicle.  Once he began

driving his patrol vehicle from the secure parking lot to his patrol zone, Plaintiff was required by

operating policy of the Sheriff's Office to turn on his police radio, to be alert and responsive to

---

[1]The facts are largely undisputed, but to the extent that there is a dispute, the Court sets
forth the facts in the light most favorable to Defendant.

[2]There are special overtime rules in place for law enforcement officers.  29 U.S.C.
§ 207(k).  Law enforcement officers who work a 14-day workweek only receive overtime for
hours worked in excess of 86 hours during the 14-day workweek.  29 C.F.R. § 553.230.

emergencies, and to turn on his Automatic Vehicle Locator system so that dispatch would be

aware of his location for his personal safety.  Plaintiff's drive from the secure parking lot to his

patrol zone took approximately 15 to 20 minutes.  However, had Plaintiff parked at one of the

various other secure parking locations within his patrol zone, he could have eliminated this 15 to

20 minute drive from the District 3 Patrol Division Office's secure parking lot to his patrol

zone.[3]

While Plaintiff drove from the secure parking lot to his patrol zone, he was allowed to

stop for coffee or get his car washed, as long as he arrived at his patrol zone by the time that his

shift was scheduled to begin.  For routine drives from the secure parking lot to his patrol zone

during which he handled no emergency calls from dispatch, Plaintiff was not compensated for

this 15 to 20 minute drive.

At the conclusion of his scheduled shift, Plaintiff drove back to the secure parking lot

where he parked and locked his patrol vehicle, transferred his patrol rifle and laptop to his

personal vehicle, and then drove home in his personal vehicle.  If Plaintiff did not have any

paperwork or evidence that he needed to submit at the District 3 Patrol Division Office, he was

required to stay in his assigned patrol zone until the end of his scheduled shift.  In such a

scenario, as long as Plaintiff did not respond to any emergency calls during his drive from his

---

[3]The parties dispute whether Plaintiff could choose which secure parking location at which to park his patrol vehicle.  Plaintiff contends that he was directed by Lt. Eric Anthes to park at the District 3 Patrol Division Office.  Defendant contends that Plaintiff could have parked much closer to his patrol zone by choosing a secure parking lot within his patrol zone.  The Court has accepted Defendant's version of this disputed factual issue and notes that it does not appear to affect the outcome of the parties' cross-motions for summary judgment.  Defendant has not cited any case law showing that Plaintiff's ability to choose which secure parking lot to use in any way affects the compensability of Plaintiff's drive time between the secure parking lot and his patrol zone.

patrol zone to the secure parking lot, he was not compensated for the 15 to 20 minute drive time

from his patrol zone to the secure parking lot.[4]

On June 22, 2015, Plaintiff filed this lawsuit under the Fair Labor Standards Act

("FLSA") against Defendant Chris Nocco, in his official capacity as Pasco County Sheriff.

Specifically, Plaintiff contends that Defendant violated the FLSA's overtime provision by failing

to pay him for the time he spent driving his patrol vehicle between Defendant's secure parking

location and his patrol zone.

## III.  Cross-Motions for Summary Judgment

The parties filed cross-motions for summary judgment on the issue of the compensability

of Plaintiff's drive time between the secure parking lot and his patrol zone.  In order to resolve

this issue, the Court first considers the relevant code provisions, regulations, and case law.

The Portal-to-Portal Act, 29 U.S.C. § 251 *et seq.,* which amends the FLSA, identifies

those employee activities which are not compensable under the FLSA. See Burton v.

Hillsborough County, Fla., 181 Fed. Appx. 829, 833 (11th Cir. 2006).  Pursuant to the Portal-to-

Portal Act, an employer is not subject to liability under the FLSA for failure to pay employees

---

[4]According to Defendant, if there was evidence or paperwork that Plaintiff needed to
submit back at the District 3 Patrol Division Office, then Plaintiff could leave his assigned patrol
zone prior to the end of his shift.  In such a situation, if the paperwork or evidence submission
process took him beyond his scheduled shift, Plaintiff was required to report the additional time
on his time sheet so that he would be compensated for it.

Plaintiff disputes that he was allowed to report such additional time, because Defendant
would not pay overtime.  The Court need not address this factual dispute, because the parties
moved for summary judgment on the issue of the compensability of Plaintiff's drive time
between the secure parking lot and his patrol zone.  Because the Court ultimately concludes that
such driving time is compensable, any additional work done by Plaintiff at the District 3 Patrol
Division Office would also be compensable.  At trial, Plaintiff can submit evidence to the jury
that he did, in fact, do such additional work for which Defendant failed to compensate him.

overtime compensation for:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
> (2) activities which are preliminary to or postliminary to said principal activity or activities,

> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if [1] the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and [2] the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a).

Thus, in order to determine the compensability of Plaintiff's travel time between the

secure parking lot and his patrol zone under the Portal-to-Portal Act, the Court must determine

whether the acts of retrieving and returning his patrol vehicle to and from the secure parking lot

are part of his principal activities. The regulations instruct the following:

> [A]n employee may, for purposes of the Portal-to-Portal Act[,] be engaged in several "principal" activities during the workday. The "principal" activities referred to in the statute are activities which the employee is "employed to perform[.]" . . . The term "principal activities" includes all activities which are an integral part of a principal activity." . . . Among the activities included as an integral part of a principal activity are those closely related activities that are indispensable to its performance.

29 C.F.R. § 790.8; see also Steiner v. Mitchell, 350 U.S. 247, 256 (1956)(stating "that activities

performed either before or after the regular work shift . . . are compensable . . . if those activities

are an integral and indispensable part of the principal activities for which" the employee is

employed to perform); IBP, Inc. v. Alvarez, 546 U.S. 21, 37 (2005)(holding "that any activity

that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under . . .

the Portal-to-Portal Act").

Pursuant to Burton, this Court concludes that Plaintiff's travel time between the secure

parking lot and his patrol zone is compensable, because the acts of retrieving and returning his

patrol vehicle to and from the secure parking lot are part of his principal activities.  In Burton,

the plaintiffs were county engineers who drove county-owned vehicles to public works job sites

to inspect subcontractors' work.  See Burton, 181 Fed. Appx. at 831. The plaintiffs sued the

county for unpaid overtime compensation for the time they spent driving the county-owned

vehicles between the county's secured parking sites and their job sites.  See id.  Like Plaintiff in

the instant case, the plaintiffs in Burton were required to drive to a secure county parking site to

retrieve their county-owned vehicles in the morning and then to return the county-owned

vehicles to the secure county parking site in the evening.  See id.  The county-owned vehicles

contained the tools and equipment that the plaintiffs used to perform their jobs, and the vehicles

served as their satellite offices, where they could perform work at the job sites.  See id.

The issues before the court were: (1) the definition of the term "travel" in § 254(a), and

(2) whether the plaintiffs' travel time between the secure parking sites and job sites was

compensable.  See id. at 834.  The court noted that § 254(a) specifically states "that 'the use of

an employer-owned vehicle for travel by an employee . . . shall not be considered part of the

employee's principal activities," but the court stated that such language does not mandate that all

travel in an employer-owned vehicle is not compensable.  See id. at 835.  Instead, the court

6

clarified that the "travel" referred to in that part of the Portal-to-Portal Act was *incidental travel*,

such as work-to-home or home-to-work commuting.  See id.  This statutory language was meant

to show that otherwise non-compensable travel does not transform into compensable travel

simply because the employee is using an employer-owned vehicle.  See id. (citation omitted).

As such, the court stated that "otherwise compensable travel time does not become non-

compensable simply through the use of an employer-owned vehicle."  Id.

The court found the plaintiffs' travel time between the secure parking sites and job sites

was compensable, stating:

> [T]he employees' workday could not begin until they arrived at the
> parking site and retrieved the county vehicles—making the act of
> retrieving the vehicle a "principal activity" and, therefore, the parking
> site itself "a place of actual performance." . . . Ultimately, the
> employees who used the county vehicles had no choice but to begin
> and end their work day not at a work site, but at a county parking
> facility.  And without the county vehicles the employees could not
> perform the principal activities for which they were
> employed—driving throughout Hillsborough County and inspecting
> public works construction sites. Needless to say, getting a county
> vehicle from the parking site and driving it to the first work site and
> returning it to the parking site was integral and indispensable to the
> plaintiffs' principal activities.

Id. at 836–37.

Based on Burton, this Court concludes that Plaintiff's travel time between the secure

parking lot and his patrol zone is compensable, because the acts of retrieving and returning his

patrol vehicle to and from the secure parking lot are part of his principal activities.  Like the

plaintiffs' vehicles in Burton, Plaintiff's patrol vehicle was his satellite office where he

performed his job as a Road Patrol Deputy.  Arguably, Plaintiff's patrol vehicle was the most

important tool he used in his job; it aided in establishing his authority as a Road Patrol Deputy.[5]

As such, retrieving and returning his patrol vehicle from and to the secure parking site was one

of Plaintiff's principal activities.  Therefore, the drive time between his principal activities of

retrieving/returning his patrol vehicle and patrolling within his patrol zone is compensable under

the continuous workday rule.  See 29 C.F.R. § 790.6 ("Periods of time between the

commencement of the employee's first principal activity and the completion of his last principal

activity on any workday must be included in the computation of hours worked . . . .").

     Defendant argues against this Court's conclusion, pointing mainly to Bonilla v. Baker

Concrete Construction, Inc., 487 F.3d 1340 (11th Cir. 2007), and Integrity Staffing Solutions, Inc.

v. Busk, 135 S.Ct. 513 (2014).[6]  The Court is not persuaded by these cases.

---

     [5]The patrol vehicle also contained a very important tool that Plaintiff needed for his job—the police dispatch radio.  Pursuant to 29 C.F.R. § 785.38, "[w]here an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked."  Thus, the time spent reporting to the District 3 Patrol Division Office to pick up his patrol vehicle and then driving to his patrol zone (and vice versa) is compensable travel time.

     [6]Defendant also heavily relies on two other non-binding, distinguishable cases: Knight v. Allstar Building Materials, Inc., 2009 WL 3837870 (M.D. Fla. Nov. 17, 2009), and Shearer v. Edger Associates, Inc., 2015 WL 9274928 (M.D. Fla. Dec, 18, 2015).  The Court is not persuaded by these cases.
     In Knight, the plaintiff was a carpenter's apprentice seeking compensation for the travel between his employer's designated meeting place for employer-provided transportation (such as a Publix grocery store) and his job site.  See Knight, 2009 WL 3837870, at *1, 10.  The plaintiff could have driven his own vehicle to the job site.  See id. at *13.  The court found this travel time to be non-compensable.  See id. at *5, 14.  The Knight case is distinguishable from the instant case, because the plaintiff in Knight sought compensation for pure travel; the instant case seeks compensation for the principal activity of retrieving/returning a patrol vehicle and the drive time between that principal activity and the principal activity of patrolling his patrol zone.
     Likewise, in Schearer, the plaintiff was a cardiac sonographer who sought overtime compensation for her travel time between her home and her first assignment, as well as between her last assignment and her home.  See Shearer v. Edger Associates, Inc., 2015 WL 9274928, at

In Bonilla, an issue before the court was whether the time construction workers spent

traveling on employer-provided transportation to a secure construction site inside the airport was

compensable under the FLSA.  See Bonilla, 487 F.3d at 1340–41.  It was undisputed that the

employees did not perform any work while traveling on the employer-provided transportation.

See id. at 1342.  The court concluded that the travel time was not compensable under the Portal-

to-Portal Act; it was merely travel to the employees' actual place of performance of their

principal activity.  See id at 1343.

The Bonilla court specifically distinguished the Burton case, stating:

> In Burton, the county employees' duties required them to drive the
> county vehicles to and from various public works locations and to
> always return the county vehicle to a secured county facility
> overnight.  This court found that the time the employees spent driving
> from the secured county location to the various work sites was
> compensable under the FLSA because picking up and delivering the
> county vehicles to the county lots was integral and indispensable to
> the employees' principal activities.  In addition, Burton found that the
> vehicles served as satellite offices for those employees to do their
> jobs at the various sites and tools necessary for the work were locked
> in the county vehicles.  In Burton, driving the vehicles was not
> merely part of the employees' commute to the principal place of
> performance but rather an aspect of that job performance.

Id. at 1345 n.7 (internal citations omitted).  Because the facts of the instant case are so closely

aligned with Burton, this Court finds that Bonilla does not change this Court's conclusion that

Plaintiff's driving time between the secure parking site and his patrol zone is compensable.

Next, Defendant relies heavily on Integrity Staffing Solutions and argues that Burton's

---

*1. The plaintiff argued that such travel time was compensable, because she was transporting
her mobile ultrasound machine, accessories, and laptop computer.  See id.  The court rejected her
argument, finding that the Portal-to-Portal Act makes clear that such travel between home and
work is not compensable.  See id. at *4.  The Schearer case is distinguishable from the instant
case, as the instant case does not involve travel between home and work.

analysis is no longer viable. In <u>Integrity Staffing Solutions</u>, the plaintiffs were warehouse workers that retrieved inventory and packaged it for shipment. <u>See Integrity Staffing Solutions</u>, 135 S.Ct. at 515. The defendant required the plaintiffs to go through an anti-theft screening process before leaving the warehouse each day, which took approximately twenty-five minutes (including waiting time). <u>See id.</u> The issue before the Court was whether the time that the plaintiffs spent waiting to undergo, and actually undergoing, the security screening was compensable under the FLSA. <u>See id.</u> The Court held that such time was not compensable. <u>See id.</u>

The Court began its analysis by pointing out that under the Portal-to-Portal Act, a principal activity includes all activities that are an integral and indispensable part of the principal activity. <u>See id.</u> at 517. The Court went on to state that "[a]n activity is therefore integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." <u>Id.</u> The Court concluded that the security screenings were a non-compensable, postliminary activity, because the defendant could have eliminated the screenings without impairing the plaintiffs' ability to complete their work. <u>See id.</u> at 518.

The Court went on to reject overbroad tests of compensability based solely on whether the employer required the activity and/or whether the activity was for the benefit of the employer. <u>See id.</u> at 519. Instead, the Court reiterated that the proper test is the integral and indispensable test, which is tied to the productive work that the employee is employed to perform. <u>See id.</u>

Defendant argues that based on <u>Integrity Staffing Solutions</u>, <u>Burton</u>'s analysis is no

longer viable.  Defendant bases this argument on the fact that the <u>Burton</u> court pointed out that

the county required the plaintiffs to park their county-owned vehicles at the secure county lots

and that such was done for the county's own benefit (to protect its vehicles).[7]  See <u>Burton</u>, 181

Fed. Appx. at 836–37.  However, those two factors were not the sole test used by the

<u>Burton</u> court to conclude that the travel time was compensable.  Instead, the <u>Burton</u> court found

that: (1) retrieving and returning the county-owned vehicles to the secure county lots was

integral and indispensable to the employees' principal activities; (2) the vehicles served as

satellite offices; and (3) driving the vehicles was not merely part of the employees' commute to

the principal place of performance, but rather, it was an aspect of that job performance.  See <u>id.</u>

at 831, 837–38.

   The <u>Burton</u> court's analysis complies with the test set forth in <u>Integrity Staffing</u>

<u>Solutions</u>—that "[a]n activity is therefore integral and indispensable to the principal activities

that an employee is employed to perform if it is an intrinsic element of those activities and one

with which the employee cannot dispense if he is to perform his principal activities."  <u>Integrity</u>

<u>Staffing Solutions</u>, 135 S.Ct at 517.  The <u>Burton</u> court found that the activities of retrieving and

returning the county-owned vehicles was integral and indispensable to the plaintiffs' engineering

jobs that could not be dispensed with because having the vehicle was an intrinsic element of their

jobs.  Likewise, in the instant case, it is even more clear that Plaintiff's patrol vehicle is an

intrinsic element used in his patrol duties that cannot be dispensed with if he is to perform his

---

   [7]Arguably, these two factors—that the employer required the activity and that the activity benefitted the employer—will always be present when the activity is compensable.  Therefore, consideration of these two factors is not erroneous; it is only erroneous to rely solely on these two factors when determining compensability.

job.  Accordingly, the Court rejects Defendant's argument that <u>Burton</u> does not control this case.

Because this Court concludes that the drive time between the secure parking lot and Plaintiff's patrol zone is compensable, the Court denies Defendant's motion for summary judgment.  Likewise, the Court grants Plaintiff's motion for summary judgment on this issue.  As such, this case will proceed to trial on the issue of damages.

## IV.  Liquidated Damages

Plaintiff also seeks summary judgment on the issue of liquidated damages.  Under the FLSA, an employer who violates the overtime provisions is liable to the employee in the amount of their unpaid overtime compensation and in an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).  However, there is a good faith defense to the award of liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the" FLSA.  29 U.S.C. § 260. Furthermore, the Eleventh Circuit has stated:

> The determination of whether an employer acted in good faith and had reasonable grounds for believing its act or omission was not a violation of the FLSA has both a subjective and objective component. Subjective good faith means the employer has an honest intention to ascertain what the FLSA requires and to act in accordance with it. Objective good faith means the employer had reasonable grounds for believing its conduct comported with the FLSA.  [G]ood faith requires some duty to investigate potential liability under FLSA.

<u>Friedman v. South Florida Psychiatric Associates, Inc.</u>, 139 Fed. Appx. 183, 185–86 (11th Cir. 2005)(quotation marks and internal citations omitted).

"[L]iquidated damages are mandatory absent a showing of good faith." <u>Spires v. Ben Hill County</u>, 980 F.2d 683, 689 (11th Cir. 1993)(citations omitted).  "The question of whether the good faith defense applies is an issue of mixed law and fact for the Court, not the factfinder, to

determine." Silas v. Hillsborough County, 2006 WL 3133026, at *6 (M.D. Fla. Oct. 30,

2006)(citations omitted); see also Notes to Pattern Jury Instruction 1.7.1, Eleventh Circuit

Pattern Jury Instructions (Civil), 2005 edition.

Plaintiff argues that he is entitled to summary judgment on the issue of liquidated

damages, and he cites to a prior Department of Labor ("DOL") investigation of Defendant on

this exact issue from 2011 through 2013.  Defendant disputes the admissibility of this evidence

and also argues that the determination of the liquidated damages issue is premature, because

there has been no finding that Defendant violated the FLSA.  However, the Court has now found

that Defendant's policy of not compensating Plaintiff for the time he spent driving between the

secure parking lot and his patrol zone violates the FLSA.  As such, the issue of liquidated

damages is ripe for consideration.  However, the Court would benefit from a reply by Plaintiff

regarding whether the Court can consider the evidence of the DOL investigation due to the

hearsay objections that Defendant has raised.  In addition, Defendant may file a sur-reply

addressing how its actions could be considered reasonable given the Burton case law directly on

point.  Accordingly, the Court will allow the parties to file a reply brief and sur-reply brief on the

liquidated damages issue.

**V.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1)    Defendant's Motion for Summary Judgment (Doc. No. 32) is **DENIED**.

(2)    Plaintiff's Motion for Summary Judgment (Doc. No. 33) is **GRANTED** to the

        extent that the Court finds that Defendant's policy of not compensating Plaintiff

        for the time he spent driving between the secure parking lot and his patrol zone

violates the FLSA.  The Court **DEFERS** ruling on Plaintiff's motion to the extent

that he raises the liquidated damages issue.

(3)  By *September 6, 2016*, Plaintiff is directed to file a reply brief, not to exceed 6

pages, to Defendant's response to his request for liquidated damages; specifically,

Plaintiff should address, at a minimum, whether the Court can consider the DOL

investigation, the newspaper article, and the letters between Defendant and the

DOL.  By *September 13, 2016*, Defendant may file a sur-reply, not to exceed 6

pages.  Defendant should address, at a minimum, how its actions could be

considered reasonable given the <u>Burton</u> case law directly on point.

(4)  The parties must file all pretrial motions, including motions in limine, by

*September 19, 2016.*  Each party may file *one* motion in limine containing all of

their arguments in a single document not to exceed 25 pages. Responses thereto

must be filed by *September 26, 2016*.

(5)  The parties' joint pretrial statement must be filed by *September 29, 2016*.

**DONE AND ORDERED** at Tampa, Florida, this 29th day of August, 2016.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record